IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

MANJULA BURRI, M.D., )
)
   Plaintiff, )
)
v. ) Case No. 24-cv-3078
)
YOUSSEF CHAMI, M.D. and )
SIU HEALTHCARE, INC., )
)
   Defendants. )

OPINION

**COLLEEN R. LAWLESS, U.S. District Judge:**

Before the Court is Defendant SIU Healthcare, Inc.'s ("SIU Healthcare") Motion to Dismiss. (Doc. 9) and accompanying Memorandum (Doc. 10).

**I.   BACKGROUND**

In October 2020, Plaintiff Dr. Burri, a cardiologist, joined the faculty of SIU School of Medicine ("University") as an Assistant Professor of Internal Medicine. (Doc. 1 at ¶ 6). As a full-time faculty member and a physician, she was eligible to and became a member of SIU Healthcare, a not-for-profit corporation affiliated with the University. (*Id.* at ¶ 7). According to the Member Practice Agreement ("Agreement") executed by Dr. Burri and SIU Healthcare:

> "a) SIU Healthcare was organized exclusively to support the teaching, research and service mission of the University; b) because she was a faculty member of the University, Dr. Burri was eligible for employment with SIU Healthcare; c) the Dean of the School of Medicine designated her for membership in SIU Healthcare to render medical care to patients in support of her academic responsibilities to the University; d) her income is a combination of income from the University

[academic base] and income from SIU Healthcare [Clinical base]; and e) the Agreement would terminate if Dr. Burri left the faculty of the University."

(*Id.* at ¶ 10; Ex. 1). Dr. Burri's compensation derived from both her faculty salary and clinical income at SIU Healthcare. (*Id.* at ¶ 8).

In both her University and SIU Healthcare positions, she was supervised by Dr. Yousseff Chami. (*Id.* at ¶¶ 2, 11). Additionally, Dr. Chami served the University as the Director of its Cardiology Fellowship Program. (*Id.* at ¶ 11). Dr. Burri provided training and supervision of physicians enrolled in the University's cardiology fellowship program. (*Id.* at ¶ 12). Further, Dr. Burri was the Chairperson of Clinic Competence Committee for the Cardiac Fellowship Program which included having a responsibility to evaluate the progress of the fellowship program. (*Id.* at ¶ 15).

Dr. Burri alleges Dr. Chami was hostile to and acted out against her due to her status as a female physician between 2020 and 2022. (*Id.* at ¶¶ 16-27). Specifically, Dr. Burri alleges Dr. Chami would: (1) frequently yell at her in front of colleagues and others without cause; (2) verbally threaten her; (3) make disrespectful comments about her and other female physicians; (4) deny her participation in the clinic in favor of a male colleague so as to not negatively impact the male colleague's income; (5) question her clinical judgment without reasonable cause; (6) refer to instance in which he used sexually explicit language to describe another female physician; and (7) ridicule another female physician and boast that he brought about that physician's termination. (Doc. 1 ¶ 24). As a result of Dr. Chami's continuing misconduct, the work environment at the University and SIU Healthcare was hostile, and, consequently, Dr. Burri suffered emotional

symptoms that became progressively worse. (*Id.* at ¶¶ 27-28). She took a medical leave of absence and ultimately left the University and SIU Healthcare in November 2022. (*Id.* at ¶ 28).

On April 1, 2024, Dr. Burri filed a four-count Complaint against Dr. Chami and SIU Healthcare. Defendants move to dismiss Count I and Count III which allege SIU Healthcare violated Dr. Burri's rights under the Equal Protection Clause of the Fourteenth Amendment on the basis of sex discrimination by Dr. Chami.

## II.    LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *See Christensen v. Cnty. of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). The court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations in the complaint as true and construing all reasonable inferences in plaintiff's favor. *Id.* at 458.

To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing she is entitled to relief and giving defendants fair notice of the claims. *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). However, the complaint must set forth facts that plausibly demonstrate a claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A plausible claim is one that alleges factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. ANALYSIS

SIU Healthcare moves for dismissal of Counts I and III, arguing: (1) SIU Healthcare is a private entity that did not engage in state action, and therefore, is not a proper defendant for a Section 1983 claim; and (2) Dr. Burri does not allege an unconstitutional policy or custom of SIU Healthcare to render it liable under Section 1983 even if it were a proper defendant.

#### A. State Action

Section 1983 includes a state-action requirement. "To state a claim for relief in an action brought under § 1983, respondents must establish ... that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). "The under-color-of-state-law element means that § 1983 does not permit suits based on private conduct, 'no matter how discriminatory or wrongful.'" *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019). However, that requirement does not necessarily mean that private actors cannot be held liable in some circumstances.

The Supreme Court has recognized several different ways in which private action may become state action. These include when the action is a result of a conspiracy between the state and private party to deprive individuals of their constitutional rights; when the state compels discriminatory action; when the state controls a nominally private entity; when the state is intertwined with the private entity's management and control; and when the state has delegated a public function to the private entity. *Hallinan v. Frat. Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 815-16 (7th Cir. 2009) (summarizing Supreme Court cases). "At its most basic level, the state action doctrine requires that a

court find such a 'close nexus between the State and the challenged action' that the challenged action 'may be fairly treated as that of the State itself.'" *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 823–24 (7th Cir. 2009) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). No single fact is sufficient for, nor particular circumstance conclusive of, state action. *Brentwood Academy v. Tennessee Secondary School Ass'n*, 531 U.S. 288, 295-296 (2001).

SIU Healthcare argues Dr. Burri has not alleged enough facts to establish SIU Healthcare is a state actor when the only factual allegation alleged related to state action is that both Dr. Burri and Dr. Chami were employed by the public entity and the private entity. (Doc. 10 at 7).

Dr. Burri contends three ways to establish state action by a private actor outlined in *Hallinan* are relevant to this case. First, SIU Healthcare was performing a public function when the University delegated a portion of its medical education mission to SIU healthcare, as outlined in the Agreement between SIU Healthcare and Dr. Burri. The Supreme Court has made clear that the relevant question is not simply whether a private entity is serving a "public function." It has held that the issue is whether the function performed has been "traditionally the *exclusive* prerogative of the State." Blum v. Yaretsky, 457 U.S. 991, 1011 (1982) (emphasis added), *quoting Jackson,* 49 U.S. at 353. Here, supporting a medical school's goals and treating clinical patients, without more explanation, do not constitute a public function as contemplated by the Supreme Court.

Second, Dr. Burri argues that the University maintains some management and control over SIU Healthcare such that the state is intertwined with the management and

control of a private entity. *Airline Pilots Association v. Department of Aviation of the City of Chicago*, 45 F.3d 1144 (7th Cir. 1995). In *Airlines Pilots Association*, plaintiffs filed a Fourteenth Amendment claim because it was denied the ability to display an advertisement in a diorama lightbox display at Chicago O'Hare Airport. *Id.* at 1147-48. The display was operated by a private contractor. However, the City contractually retained authority to refuse advertising if it found it objectionable, paid for the electricity to illuminate the displays and the costs for construction-related relocation, reaped sixty percent of the revenue that the contractor received, and had contractual authority to review the employment qualifications and order employee removal. *Id.* at 1149. Based upon the intertwined nature of the relationship, the Court found a joint enterprise and held that the private contractor became a state actor for its analysis. *Id.* at 1150.

Dr. Burri points to the fact that Dean of the University designates SIU Healthcare members, and that membership is limited to faculty at the University as adequate management and control. This, on its own, is not enough. Dr. Burri's Complaint does not allege facts to infer that the University established the membership criteria, controlled personnel or other decisions made by SIU Healthcare, or shared in the profits of SIU Healthcare as in *Airlines Pilots Association*. *See also Burton v. Wilmington Park Authority*, 365 U.S. 715 (1961) (holding that discriminatory behavior by private restaurant leasing public property with a public function from the state is state action).

Third, Dr. Burri contends there is a conspiracy between a state actor and a private actor because Dr. Chami's treatment of her occurred in both his public role at the University and his position for SIU Healthcare.. However, it is unclear from the

Complaint which of Dr. Chami's actions that Dr. Burri complains of, if any, were committed as her supervisor at SIU Healthcare and how the University's fellowship program interacted between the two entities. Additionally, a conspiracy or joint engagement requires two or more actors. Dr. Burri does not claim wrongdoing by any other individual or group of individuals acting in concert or agreement with Dr. Chami. Therefore, Dr. Burri's allegation of a conspiracy involving Dr. Chami alone is insufficient to establish state action by a private actor.

Based on the foregoing, Defendant's Motion to Dismiss on this basis is granted without prejudice.

### B. Unconstitutional Policy or Custom

SIU Healthcare alternatively argues that even if there was state action, it cannot be held liable because Dr. Burri does not allege that the constitutional deprivation occurred as the result of an express policy or custom. Dr. Burri argues SIU Healthcare should be held liable under *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978) because Dr. Chami was a policy maker at the University and SIU Healthcare.

Under *Monell*, local government entities can be held liable under Section 1983 for constitutional deprivations caused by their official policies or customs. *Monell*, 436 U.S. at 694. More specifically, a local government entity can be liable where there is "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Teesdale v. City of Chicago*, 690 F.3d 829, 834 (7th Cir. 2012).

In order to establish that an individual is a final policymaker, a plaintiff must show that the individual is responsible for establishing the final policy on a particular issue. *See Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 676 (7th Cir. 2009) ("The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion."). A person has final policymaking authority for employment purposes if he has "authority to set policy for hiring and firing." *Kujawski v. Bd. of Comm'rs of Bartholomew Cnty.*, 183 F.3d 734, 737 (7th Cir. 1999) ("There must be a delegation of authority to set policy for hiring and firing, not a delegation of only the final authority to hire and fire."); *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 676 (7th Cir. 2009) ("It is a well-established principle that the mere unreviewed discretion to make hiring and firing decisions does not amount to policymaking authority.").

Dr. Burri argues that Dr. Chami was a final policymaker at SIU Healthcare because he served as the vice chairman of the Department, chairperson of the Division, and director of the Cardiology Fellowship Program. However, Dr. Burri fails to allege sufficient facts to connect how those roles make him a final policymaker for SIU Healthcare. All of Dr. Chami's positions relate to his employment with the University.

Although Dr. Chami was Dr. Burri's supervisor at SIU Healthcare, there is no indication that he had any final policy-making authority at SIU Healthcare. Even if this Court could properly infer that Dr. Chami acted as a dual agent for the University and SIU Healthcare, there are no facts from which to infer that he did so with any final policy-making authority for SIU Healthcare, as opposed to the University. Such allegations are

required to assert such a Section 1983 against SIU Healthcare. Therefore, Dr. Burri's *Monell* claim is dismissed without prejudice with leave to file an amended complaint.

### III.   CONCLUSION

For the reasons stated above, SIU Healthcare's Motion to Dismiss (Doc. 9) is GRANTED. The Complaint is dismissed without prejudice and Dr. Burri may file an amended complaint within 21 days of this Order.

ENTER: March 31, 2025

_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE