E-FILED
Friday, 27 March, 2026  09:43:18 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MANJULA BURRI,<br>Plaintiff, | ) ) ) | |
| v. | ) ) ) | Case No. 24-cv-3078 |
| YOUSSEF CHAMI and<br>SIU HEALTHCARE, INC.,<br>Defendants. | ) ) ) ) | |

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is Defendant SIU Healthcare, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint. (Doc. 24). For the following reasons, Defendant's Motion to Dismiss is GRANTED.

## I.     BACKGROUND

Plaintiff Dr. Manjula Burri sued her employer, SIU Healthcare, Inc. ("SIU Healthcare") along with her supervisor, Dr. Youssef Chami, under 42 U.S.C. § 1983 for sex discrimination in violation of the Fourteenth Amendment. (Doc. 1). The Court dismissed Burri's claims against SIU Healthcare because it was not a state actor amenable to suit and the alleged discrimination was not caused by SIU Healthcare's policies or customs. (Doc. 20). Burri has since filed an Amended Complaint in an attempt to cure those deficiencies. (Doc. 22). SIU Healthcare moves to dismiss the Amended Complaint for failure to state a claim under Rule 12 (b)(6).

SIU Healthcare is a non-profit corporation affiliated with the Medical School of Southern Illinois University ("University"), a public university. (Doc. 22 at ¶ 4). It is "organized exclusively for charitable, educational, and scientific purposes and to benefit and support the teaching, research, and service missions of [the Medical School]." (Doc. 22-1 at 1). Membership in SIU Healthcare is limited to Medical School faculty wherein the Medical School Dean designates members who provide "professional service to patients in support of [their] academic responsibility to the [Medical School]." (Doc. 22-1). Compensation for faculty is based on both their faculty salary and their income from SIU Healthcare. (Doc. 22 at ¶ 9). The two institutions also jointly provide general and professional liability insurance to SIU Healthcare members. (Doc. 22-1 at 7–8).

In 2020, Burri, a cardiologist, joined the Medical School's faculty as an assistant professor and became a member of SIU Healthcare. (*Id.* at ¶¶ 12, 15). As part of her employment, Burri trained and supervised fellows in the Medical School's Cardiology Fellowship Program ("Program") and Chaired the Program's Clinical Competence Committee. (*Id.* at ¶¶ 18, 26). As Chair, Burri evaluated the progress of fellows in the Program. (*Id.* at ¶ 26). Chami was Director of the Program and Burri's immediate supervisor. (*Id.* at ¶¶ 2, 17). As Director, Chami had policymaking authority as to the duties, expectations, discipline, and supervision of fellows in the Program. (*Id.* at ¶ 23).

Burri alleges Chami abused his authority as Director by sexually discriminating against her. For example, he frequently yelled at her, threatened her, made disrespectful comments about female physicians, and aggressively questioned her medical judgment.

(*Id.* at ¶¶ 30, 32–35). Chami did not show this kind of disrespect to his male colleagues. (*Id.* at ¶ 31). As Chair of the Clinical Competence Committee, Burri raised concerns to Chami about a male fellow she believed was underperforming. (*Id.* at ¶¶ 32, 34). Burri's concerns only angered Chami, and he derided her for taking issue with this fellow. (*Id.*). In another instance, Burri informed Chami that a different male fellow was resistant to instruction from females, but he ignored her concern. (*Id.* at ¶ 33). Because Chami created a hostile work environment, Burri took a medical leave of absence and eventually resigned from the Medical School and SIU Healthcare. (*Id.* at ¶¶ 39, 43–44).[1]

## II.    DISCUSSION

### A. Legal Standard

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *See Christensen v. Cnty. of Boone*, Ill., 483 F.3d 454, 458 (7th Cir. 2007). The court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations in the complaint as true and construing all reasonable inferences in plaintiff's favor. *Id.* at 457. To state a claim for relief, a plaintiff need only provide a "short and plain statement of the claim" showing she is entitled to relief and giving defendants "fair notice of the claim[s] and its basis." *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). However, the complaint must set forth facts that plausibly demonstrate a claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A plausible claim is one that alleges factual content from which the court can

---

[1] There are several paragraphs numbered 43 and 44 in the Amended Complaint. The citation refers to paragraphs 43 and 44 on pages 11 and 12 of the Amended Complaint.

reasonably infer that defendants are liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Analysis

### (1) State Action

"To state a claim for relief in an action brought under § 1983, respondents must establish . . . that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Id.* (internal quotation marks omitted). Yet private actors can be held liable in certain situations. *See Hallinan v. Frat. Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 815–16 (7th Cir. 2009) (summarizing Supreme Court cases). One such situation is when a "symbiotic relationship" exists between the private actor and the state. *Air Line Pilots Ass'n, Int'l v. Dep't of Aviation of City of Chicago*, 45 F.3d 1144, 1149 (7th Cir. 1995).

The Supreme Court has found a symbiotic relationship between a state and a private actor exists when the state has "so far insinuated itself into a position of interdependence with [the private actor] that it must be recognized as a joint participant in the challenged activity." *Burton v. Wilmington Parking Auth.* 365 U.S. 715, 725 (1961).[2] Relatedly, state action can also be found when "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter

---

[2] The Supreme Court in *Burton* did not use the term "symbiotic relationship" but later referred to *Burton* as establishing such a test. *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 175 (1972).

may be fairly treated as that of the State itself." *Sullivan*, 526 U.S. at 52 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). "Whether such a close nexus exists . . . depends on whether the State has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id.* (internal quotation marks omitted). No single fact is sufficient for, nor any particular circumstance conclusive of, state action. *Brentwood Academy v. Tennessee Secondary School Ass'n*, 531 U.S. 288, 295–96 (2001).

Burri alleges SIU Healthcare is a state actor because it is functionally the clinical practice arm of the Medical School. (Doc. 22 at ¶ 9). The Amended Complaint contains several new allegations on the relationship between the two institutions, but neglects to show how SIU Healthcare participated or exercised any authority over the alleged conduct. Specifically, Burri asserts Chami used and abused his authority as Director of the Cardiology Fellowship Program to discriminate against her but explicitly alleges the Program is part of the University, not SIU Healthcare. (*Id.* at ¶¶ 17–18). Although Program fellows were supervised by attending physicians who were members of SIU Healthcare, the University runs the Program. (*Id.* at ¶ 25). Burri also alleges Chami's claimed "final policy making authority" was as the Director of the Program on behalf of the University. (Doc. 28 at 4). Despite these allegations, Burri claims Chami was acting within the scope of his employment for both SIU Healthcare and the University at all relevant times. The Court will not credit this allegation as it is belied by pled facts and is conclusory. *See Bell Atl. Corp.*, 550 U.S. at 555.

Burri also argues that the relationship between SIU Healthcare and the University, is so symbiotic as to constitute "a *Burton* type of joint enterprise." (Doc. 28 at 5). In *Burton*, the Supreme Court found the operator of a restaurant located in a building owned by a state-created parking authority and leased from that authority violated the Fourteenth Amendment by refusing to serve a Black patron. 365 U.S. 715. The Court listed various ways in which the restaurant and parking authority were a joint enterprise such as: the restaurant enjoyed certain tax exemptions through the parking authority, the building in which the restaurant was located was "erected and maintained with public funds," and the restaurant guests were given a place to park their cars, thereby "provid[ing] additional demand for the [parking authority's] facilities." *Id.* at 723–24. The Court concluded the restaurant was "operated as an integral part of a public building devoted to a public parking service." *Id.* at 724.

Here, while SIU Healthcare and the University do have a mutually beneficial relationship, the University has not, like the parking authority in *Burton*, "so far insinuated itself into a position of interdependence with [the private actor] that it must be recognized as a joint participant in the challenged activity." *Id.* at 725. In *Burton*, it was clear to patrons that the restaurant was an integral part of the parking facilities operated by the parking authority. SIU Healthcare and the University do not share the same building, and the Medical School does not maintain the type of control over SIU Healthcare that the parking authority had over the restaurant. All the clinical services SIU Healthcare provides are not alleged to benefit the Medical School in the same

"peculiar" fashion that the restaurant and parking authority benefitted each other. Therefore, SIU Healthcare is not so interdependent with the Medical School operation that the two engaged in a "joint enterprise" as in *Burton*.

The Amended Complaint does not alleged state action under *Airline Pilots Association*, 45 F.3d 1144. In *Airline Pilots*, a plaintiff was denied the opportunity to display an advertisement in a diorama lightbox display at Chicago O'Hare Airport. 45 F.3d at 1147–48. The private contractor operated the display but the City of Chicago had veto power over any advertising it found objectionable, paid for the electricity to light the display and certain construction costs, provided free office and storage space to the contractor, received sixty percent of the revenue paid to the private contractor, and had the power to review the qualifications of the private contractor's employee and order their removal. *Id.* at 1149. The Court held the city and the private contractor were engaged in a joint enterprise like the one in *Burton*. *Id.*

Conversely, the nexus between SIU Healthcare and the Medical School is much more attenuated. The Amended Complaint alleges SIU Healthcare was organized to support the University's teaching, research, and service mission through providing clinical education to medical students. Additionally, the University Dean appoints SIU Healthcare Members, and the University assists SIU Healthcare with certain financial services. Yet, Burri has not alleged sufficient facts to infer "the University established the membership criteria, controlled personnel or other decisions made by SIU Healthcare, or shared in the profits of SIU Healthcare." (Doc. 20 at 6). As such, the Court cannot infer

Page 7 of 10

the University coerced or strongly encouraged SIU Healthcare to violate Burri's rights, especially given Chami was acting in his capacity as Director of a University program when he discriminated against Burri.

In sum, a private actor cannot be held liable under Section 1983 for something the state did, even if that private actor is intertwined with the state in some other way. Burri must plead facts to reasonably infer Chami's challenged conduct as Director of the University's Cardiology Fellowship Program was done jointly in his capacity as both an SIU Healthcare and University employee. Therefore, the Court finds Burri has failed to state a claim as to Count I.

### (2) *Monell* Liability

Under *Monell v. Department of Social Services*, local government entities can be held liable under Section 1983 for constitutional deprivations caused by their official policies or customs. 436 U.S. 658, 694 (1978). *Monell* also applies to private corporations found to be state actors. *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 766 n. 6 (7th Cir. 2002) ("For purposes of § 1983, we have treated a private corporation acting under color of state law as though it were a municipal entity."). *Monell* liability exists when a constitutional violation is caused by "an unconstitutional policy or custom of the corporation itself." *Shields v. Ill. Dep't of Corrs.*, 746 F.3d 782, 789 (7th Cir. 2014). A party can establish an official policy when there is "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was

caused by a person with final policymaking authority." *Teesdale v. City of Chi.*, 690 F.3d 829, 834 (7th Cir. 2012). "Monell liability is not a form of respondeat superior." *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 674–75 (7th Cir. 2009). Rather, liability can arise for a state actor when a custom or policy of that actor made by "those whose edicts or acts may fairly be said to represent official policy" causes injury. *Id.* at 674 (quoting *Monell*, 436 U.S. at 694).

Burri argues *Monell* liability arises due to Chami's final policymaking authority as Program director. SIU Healthcare does not substantively contest that Chami had some policymaking authority in this role. Rather, it argues Chami was not a policymaker *for SIU Healthcare* because the Program is run by the *University*. Under Seventh Circuit precedent, "[t]he fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.* at 676 (internal quotation marks omitted). The question is not whether one is a policymaker in any respect for any party, but whether one is a policymaker "in a particular area, or on a particular issue" and "for the municipality" (or in this case, private corporation). *Id.* at 674, 676 (internal quotation marks omitted).

Thus, the relevant questions is whether Chami infringed Burri's rights in his capacity as a policymaker for SIU Healthcare. The Amended Complaint and Burri's brief do not allege Chami had any final policymaking authority outside his role as Program director. (*See* Doc. 28 at 7 ("The conduct of Dr. Chami which is at issue in this case arose

out of his role as the Director of the Program.")). Chami's alleged authority over Program policies "relating to the duties, expectations, discipline, and supervision of cardiology fellows," (Doc. 22 at ¶ 23), are insufficient to reasonably infer he was a final policymaker "in a particular area" that would give rise to *Monell* liability against SIU Healthcare. Therefore, Defendant's Motion to Dismiss is granted on Count II.

## III.    CONCLUSION

Accordingly, SIU Healthcare's Motion to Dismiss is GRANTED. (Doc. 24). Burri is granted leave to file a Second Amended Complaint within twenty-one days of the entry of this order and in compliance with the Court's guidance.

ENTER: March 26, 2026

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE